UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TRISHA HILL and JAMES HILL,

    Plaintiffs,

v.                                                  Case No: 8:22-cv-2064-CEH-JSS

KENYON POWER BOATS, INC.,
BLACKFIN BOATS, LLC and
BRUNSWICK CORPORATION,

    Defendants.
_____/

## **ORDER**

    This personal injury case brought under Florida law is before the Court on the Plaintiffs' Motion to Remand (Doc. 11). In the motion, Plaintiffs Trisha and James Hill request the Court remand this action to state court. Defendant, Brunswick Corporation d/b/a Mercury Marine ("Mercury"), filed a response in opposition (Doc. 14), and Plaintiffs replied (Doc. 18). Defendants, Kenyon Power Boats, Inc. ("Kenyon") and Blackfin Boats, LLC, ("Blackfin"), did not respond. Plaintiffs additionally filed a Notice of Supplemental Authority. Doc. 23. The Court, having considered the motion and being fully advised in the premises, will grant Plaintiffs' Motion to Remand and remand this action to the Circuit Court for the Sixth Judicial Circuit in and for Pinellas County for lack of jurisdiction.

I.  BACKGROUND

On August 4, 2022, Plaintiffs, Trisha and James Hill, filed a six-count Complaint alleging claims of strict liability and negligence against Defendants, Kenyon, Blackfin, and Mercury. Doc. 1-1. The action was filed in the Sixth Judicial Circuit in and for Pinellas County, Florida. *Id.* All claims are brought under Florida law. *Id.*

The Complaint alleges that on June 19, 2022, Plaintiffs were enjoying the day on a 2022 Blackfin 252CC boat ("the subject boat"), which was equipped with a Mercury 200CXL outboard motor, model number 12000018A ("the subject motor"). *Id.* ¶¶ 8, 9. The subject boat and motor were sold to Plaintiffs by Defendant Kenyon. *Id.* ¶ 10. The boat is configured with a cutout on the starboard transom, leading to a boarding ladder off the starboard stern, immediately adjacent to the subject motor. *Id.* ¶ 11. The motor is designed with a "V" shaped vent, which creates a hazard where items, including fingers, can become stuck, damaged, or injured. *Id.* ¶¶ 12, 13. Given the placement of the subject motor adjacent to the ladder and platform, there is nothing else for individuals to hold onto for support, other than the subject motor, when ascending or descending the ladder. *Id.* ¶ 14.

At the time of the incident, the subject boat was anchored in shallow water at Silver Glen Springs located in or around the Ocala National Forest in Florida. *Id.* ¶ 16. As Mrs. Hill attempted to exit the subject boat, she placed her hand on the subject motor for support. *Id.* ¶ 17. As Mrs. Hill made the final step into the water, her left

thumb unexpectedly lodged into the point of the "V" shaped vent causing her left thumb to rip off from her hand. *Id.* ¶ 18. Plaintiffs sued Defendants in state court for strict liability and negligence. Doc. 1-1.

On September 7, 2022, Defendant Mercury removed the action to this Court, with the consent of the co-defendants, predicating the Court's subject matter jurisdiction on the basis that the boating accident, which is the subject of Plaintiffs' Complaint, purportedly occurred in a federal enclave, thereby giving rise to federal jurisdiction. Doc. 1. Mercury cites to federal Forest Service websites showing Silver Glen Springs Recreation Area being contained within the Ocala National Forest, which is federal land.

Plaintiffs' Complaint alleges the boating accident occurred in "shallow water at Silver Glen Springs located in or around the Ocala National Forest in Florida." Doc. 1-1 ¶ 16. Mercury submits that since Silver Glen Springs and the Ocala National Forest are located in a federal enclave, this Court has subject matter jurisdiction over the action. According to Mercury, at the essence of the dispute is the fact this accident occurred in the Ocala National Forest, which is owned by the federal government, and thus federal court jurisdiction is appropriately invoked.

Plaintiffs move to remand the action to state court because Silver Glen Springs is not owned by the federal government and thus is not a federal enclave and the federal government does not own the running water where the action arose. Doc. 11. Defendant Mercury responds in opposition arguing the incident occurred in the Ocala National Forest which is owned by the federal government giving rise to exclusive

3

federal jurisdiction. Doc. 14. Defendants attach a copy of President Theodore Roosevelt's 1908 Proclamation of the Ocala National Forest as a national forest. Doc. 14-2. Defendants further argue that although the federal government does not own the running water, it owns the submerged land beneath those waters.

In reply, Plaintiffs argue that Mercury seeks to drastically expand federal enclave jurisdiction without consideration for whether jurisdiction is proper under the Enclave Clause. Doc. 18. Plaintiffs additionally submit that even if Ocala National Forest is a federal enclave, federal enclave jurisdiction exists only where the claim arises on the federal enclave, not just near it. As the removing party, Mercury bears the burden of establishing that removal is proper, and yet, Plaintiffs argue, it provides no evidence of federal ownership of the running water of Silver Glen Springs, whether the state has consented to exclusive jurisdiction, or whether the federal government has accepted jurisdiction. In response to Mercury's argument that the area near Silver Glen Springs is policed by federal officers, Plaintiffs proffer a photograph of a Silver Glen Springs Welcome sign posted in the area that indicates it is "cooperatively managed by the Florida Fish and Wildlife Conservation Commission, U.S. Forest Service, and the Florida Department of Environmental Protection." Doc. 18-1.

## II.   LEGAL STANDARD

Removal of cases to federal court is governed by 28 U.S.C. § 1441, which provides in part that "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction may be removed by the defendant or the defendants to the

district court of the United States for the district and division embracing the place where such action is pending." *Id.* at § 1441(a). Federal district courts are courts of limited jurisdiction. *See Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1260–61 (11th Cir. 2000). Parties seeking to invoke subject matter jurisdiction must show that the underlying claim is based upon either diversity jurisdiction (cases in which the parties are of diverse citizenship and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs"), or the existence of a federal question (*i.e.*, "a civil action arising under the Constitution, laws, or treaties of the United States"). *See* 28 U.S.C. §§ 1331–1332.

Removal jurisdiction is construed narrowly with all doubts resolved in favor of remand. *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999); *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998). "A removing defendant bears the burden of proving proper federal jurisdiction." *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002) (citing *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319–20 (11th Cir. 2001)); *see Univ. of S. Ala.*, 168 F.3d at 411–412 ("The burden of establishing subject matter jurisdiction falls on the party invoking removal.").

**III.   DISCUSSION**

Plaintiffs move to remand this action to state court because subject-matter jurisdiction is lacking. Doc. 11. "The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Steel Co. v. Citizens for a Better*

5

*Env't*, 523 U.S. 83, 94–95 (1998) (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)).

Mercury seeks to invoke the jurisdiction of this Court arguing that the accident on the subject boat occurred in a federal enclave, giving rise to exclusive jurisdiction in federal court. As the removing party, Mercury bears the burden of establishing that jurisdiction is proper. Plaintiffs argue that Mercury falls far short of satisfying its burden to show the Court has federal question jurisdiction. Specifically, Plaintiffs argue that Silver Glen Springs is not owned by the federal government, and even if it is, the federal government could not hold title to the running waters on which the accident occurred. Moreover, regardless of ownership, the federal government has never accepted jurisdiction over the area as required to confer federal enclave jurisdiction.

A "federal enclave" is a "[t]erritory or land that a state has ceded to the United States." *Black's Law Dictionary* 667 (11th ed. 2019); *see Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1235 (10th Cir. 2012) ("A federal enclave is created when a state cedes jurisdiction over land within its border to the federal government and Congress accepts that cession."). Federal enclave jurisdiction grows out of Article I, section 8, clause 17 of the United States Constitution which provides in relevant part that the Constitution grants Congress the power "[t]o exercise exclusive Legislation in all cases whatsoever . . . over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings." U.S. Const. art. I., § 8, cl. 17. Citing to President Roosevelt's

1908 Proclamation declaring the Ocala National Forest to be federal land, Mercury argues this evidences the government's assertion of exclusive jurisdiction over Ocala National Forest where Silver Glen Springs is located.

To establish that an action arose in a federal enclave, a party must show that: (1) the United States acquired the land through purchase, condemnation, or cession from the state; and (2) the state legislature consented to the jurisdiction of the federal government. *See Paul v. United States*, 371 U.S. 245, 264–65 (1963). Additionally, for property acquired after 1940, the federal government must expressly accept jurisdiction "by filing a notice of acceptance with the Governor of the State or in another manner prescribed by the laws of the State where the land is situated." 40 U.S.C. § 3112(b); see *Paul*, 371 U.S. at 264 ("Since 1940 Congress has required the United States to assent to the transfer of jurisdiction over the property, however it may be acquired."); *see also United States v. Gliatta*, 580 F.2d 156, 158 (5th Cir. 1978)[1] ("there has existed since 1940 the additional requirement, imposed by Congress, that the United States give its affirmative assent to the transfer of exclusive or concurrent jurisdiction before such jurisdiction becomes effective").

Indeed, for land acquired after the effective date of the statute, "[i]t is not required that the Federal Government obtain exclusive jurisdiction in the United States over land or an interest in land it acquires" and a presumption arises "that

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

jurisdiction has not been accepted until the Government accepts jurisdiction . . . ." 40 U.S.C. § 3112(a), (c). Defendants argue this statute is inapplicable because President Roosevelt's 1908 Proclamation pre-dates the effective date of the statute. While the Proclamation establishes that the Ocala National Forest became federal land in 1908, Defendants have not proffered evidence that the area of Silver Glen Springs has been acquired, purchased, or otherwise condemned by the federal government so as to give rise to exclusive federal jurisdiction or to establish that the federal government accepted such jurisdiction. *See Dekalb Cnty., Ga. v. Henry C. Beck Co.*, 382 F.2d 992, 994–95 (5th Cir. 1967)[2] (holding that the United States must take some affirmative action to accept jurisdiction over federal enclaves).

In support of their request for remand, Plaintiffs proffer the Warranty Deed reflecting that the land area surrounding Silver Glen Springs was privately owned until 1989, at which time it was purchased by the St. Johns River Management District. Doc. 11-1. In May 1990, the area was purchased by the United States Forest Service. Doc. 11-2. Plaintiffs submit that the purchase by the Forest Service included the land area referred to as the Silver Glen Springs Recreational Area but did not include the submerged lands under the Silver Glen Springs, nor the water of the springs. The boundary survey submitted by Plaintiffs reflect that the property owned by the Forest Service runs along the water's edge and does not include the springs where the action arose. Doc. 11 at 9. In the absence of evidence of federal government ownership,

---

[2] *See Bonner,* 661 F.2d at 1209.

Mercury cannot establish its claim that the subject area is a federal enclave. Even if the government's titled ownership could be proven, however, Mercury still fails to show federal acceptance of jurisdiction for the area as required by 40 U.S.C. § 3112(c). In contrast, Plaintiffs have proffered evidence that Silver Glen Springs is being cooperatively managed by state and federal agencies. Doc. 18-1.

"The jurisdiction of a court over the subject matter of a claim involves the court's competency to consider a given type of case and cannot be waived or otherwise conferred upon the court by the parties." *Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1000 (11th Cir. 1982). The bases for federal subject matter jurisdiction are confined, as federal courts are "empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution or otherwise authorized by Congress." *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994). Because Mercury has failed to carry its burden that jurisdiction is proper in this Court, this action is due to be remanded. Accordingly, it is

**ORDERED**:

1. Plaintiffs' Motion to Remand (Doc. 11) is **GRANTED**.

2. This action is **REMANDED** to the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida, for lack of jurisdiction.

3. The Clerk is directed to transmit a certified copy of this Order to the Clerk of the Sixth Judicial Circuit Court, in and for Pinellas County, Florida.

4. The Clerk is further directed to terminate any pending motions and deadlines and **CLOSE** this case.

**DONE AND ORDERED** in Tampa, Florida on April 11, 2023.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any